IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **SHARON L. FLEMING, Administrator** )<br>of the Estate of Paul K. Fleming, deceased )<br>)<br>  **Plaintiff,** )<br>)<br>**v.** )<br>)<br>)<br>)<br>**MOUNTAIN STATES HEALTH** )<br>**ALLIANCE d/b/a Russell County** )<br>**Center** )<br>)<br>  **Defendant.** ) | **Civil Action No. 1:11cv00050**<br>  <u>**MEMORANDUM**</u><br>  <u>**OPINION**</u> |

  This case is before the undersigned on the plaintiff Sharon L. Fleming's Motion To Compel, (Docket Item No. 36) ("Motion"). A hearing was held before the undersigned on May 21, 2012. Based on the arguments and representations of counsel heard before the undersigned on May 21, 2012, and for the reasons set out below, the Motion will be granted.

I.

  This case arises from a fall sustained by Paul K. Fleming, the plaintiff's decedent, on January 17, 2010, after being admitted to the hospital for treatment of progressive pneumonia a week earlier. Mr. Fleming's fall risk had been assessed as a 16 on January 16, 2010, and a bed sensor was in use on that day. However, at the time of Mr. Fleming's fall in the early morning hours of January 17, 2010, the bed sensor was turned off. Mr. Fleming went to the bathroom, where he slipped,

1

fell and hit the back of his head. When Mr. Fleming's treating physician was notified of the fall, "Fall Protocol I" was initiated. Mr. Fleming's fall resulted in a subdural hematoma from which he died later that same day.

The Motion seeks the following documents corresponding to Requests for Production 4, 5, 6 and 7, respectively:

(4) any and all fall prevention policies that Russell County Medical Center had in place on January 17, 2010;

(5) any and all in-service training manuals and documents given to Robin Jessee, Amanda Hess, Brandon Whited, Audrey Compton, "M. Shelton, RN," Wanda Armes or Jamie Burk prior to January 18, 2010;

(6) any and all policy documents and in-service training on bed alarms, including, but not limited to, policies regarding the installation, deactivation, reactivation and withdrawal of the bed alarm; and

(7) any documents responsive to Interrogatory 7, which asks for the identification of any and all incident reports created as a result of Mr. Fleming's January 17, 2010, fall.

The defendant objected to Request for Production 4, the hospital's fall prevention policies effective on the date of Mr. Fleming's fall, on the ground that any such policies and procedures are privileged under Virginia Code §§ 8.01-581-16, 8.01-581.17, which will hereafter be referred to as the "quality assurance privilege." It further objected on the ground that the request sought to obtain its private rules which it claims are irrelevant and inadmissible under Virginia law pursuant to *Pullen & McCoy v. Nickens*, 310 S.E.2d 452 (Va. 1983), and also

2

noting that, in Virginia, the applicable standard of care in a medical malpractice case is provided by Virginia Code § 8.01-581.20 and established through expert testimony.  The defendant objected to Request for Production 5, the in-service training manuals and documents given to Mr. Fleming's nursing staff, on the ground that it was overly broad, unduly burdensome, irrelevant to the issues in the case and not reasonably calculated to lead to the discovery of admissible evidence.  Likewise, the defendant objected to Request for Production 6, the documents and in-service training manuals on bed alarms, as overly broad, unduly burdensome, irrelevant to the issues in the case and not reasonably calculated to lead to the discovery of admissible information.  It further objected to this request on the ground that such policies and procedures are privileged under the quality assurance privilege and that, to the extent the request sought to obtain its private rules, they were irrelevant and inadmissible.  The defendant objected to Request for Production 7, the incident reports relating to Mr. Fleming's fall, to the extent that it seeks to discover materials privileged by the attorney-client privilege, the work-product doctrine and/or the privilege afforded to materials generated and steps taken in anticipation of and in the defense of litigation.  The defendant also objected on the ground that such information is privileged under the quality assurance privilege.

## II.

As an initial matter, I will address the defendant's argument that the Motion should be denied as untimely because it was filed subsequent to the cutoff for discovery.  Pursuant to this court's Scheduling Order entered on October 26, 2011, the parties agreed to a discovery plan which required that all discovery be conducted on or before April 27, 2012.  The defendant contends that the Motion is

3

untimely because it was filed on April 30, 2012, three days after the discovery cutoff date. I disagree. By entering this Scheduling Order, the court did not intend to require that any such motion to compel be filed before the cutoff for discovery. As stated in the Scheduling Order, the court intended that written discovery was to be served in sufficient time to allow a response before the discovery cutoff date. Here, the plaintiff sent the Supplemental Interrogatories and Request for Production of Documents and Plaintiff's Request for Admission to Defendant on March 19, 2012. (Exhibit A to Docket Item No. 51). The defendant was able to respond thereto on April 9, 2012, approximately three weeks prior to the discovery cutoff date. (Ex. B to Docket Item No. 51). Also, plaintiff's counsel required some time to review the discovery responses and confer with defense counsel before filing the Motion. It is for these reasons that I find the defendant's untimeliness argument unpersuasive.

Next, this court recognizes that there is a split among the circuit courts in Virginia regarding whether a health care provider's policies, procedures and protocols are privileged materials pursuant to Virginia Code §§ 8.01-581.16, 8.01-581-17 (2011 Cum. Supp.).[1] The Virginia Supreme Court has not addressed this issue. Virginia Code § 8.01-581.17 is entitled "Privileged communications of certain committees and entities." The relevant portions of this statute are as follows:

> B. The proceedings, minutes, records, and reports of any (i) medical staff committee, utilization review committee, or other committee, board, group, commission or other entity as specified in § 8.01-581.16; (ii) nonprofit entity that provides a centralized

---

[1] Virginia Code § 8.01-581.16 provides that members of or consultants to certain boards or committees have civil immunity.

credentialing service; or (iii) quality assurance, quality of care, or peer review committee … together with all communications, both oral and written, originating in or provided to such committees or entities, are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings, minutes, records, reports, or communications. … Nothing in this section shall be construed as providing any privilege to any health care provider … with respect to any factual information regarding specific patient health care or treatment, including patient health care incidents, whether oral, electronic, or written.   However, the analysis, findings, conclusions, recommendations, and the deliberative process of any medical staff committee, utilization review committee, or other committee, board, group, commission, or other entity specified in § 8.01-581.16, as well as the proceedings, minutes, records, and reports, including the opinions and reports of experts, of such entities shall be privileged in their entirety under this section.

C. Nothing in this section shall be construed as providing any privilege to health care provider, emergency medical services agency, community services board, or behavioral health authority medical records kept with respect to a patient, whose treatment is at issue, in the ordinary course of business of operating a hospital … nor to any facts or information contained in medical records, nor shall this section preclude or affect discovery of or production of evidence relating to hospitalization or treatment of such patient in the ordinary course of the patient's hospitalization or treatment. …

The parties agree that there are no written circuit court opinions from the Twenty-Ninth Judicial Circuit[2] addressing this issue. After reviewing several Virginia circuit court cases, some finding that the quality assurance privilege extends to policies, procedures and protocols, and some finding that the privilege

---

[2] The Twenty-Ninth Judicial Circuit encompasses the following counties in Virginia: Buchanan, Dickenson, Russell and Tazewell.

does not so extend, I am of the opinion that those cases declining to extend the privilege are the better-reasoned ones. Specifically, I find that the Virginia General Assembly, in enacting this quality assurance privilege, intended to promote open and frank discussion *during* the peer review process among health care providers with the ultimate goal of improving the quality of health care. *See Mejia-Arevalo v. INOVA Health Care Servs., et al.*, 77 Va. Cir. 43 (Fairfax County 2008); *Auer v. Baker*, 63 Va. Cir. 596 (Norfolk 2004); *Francis v. McEntee*, 10 Va. Cir. 126 (Henrico County 1987). As the Roanoke City Circuit Court stated in *Johnson v. Roanoke Mem. Hosps.*, 1987 Va. Cir. LEXIS 86, at *5 (Roanoke 1987), I find that "the ultimate end results of such critiques, which might find their way into depersonalized manuals of procedure and which have been shorn of individual criticisms, do not merit the same concern for protection from public scrutiny." As the Fairfax County Circuit Court held in *Estate of Curtis v. Fairfax Hosp. Sys., Inc.*, 21 Va. Cir. 275, 277-78 (Fairfax County 1990), the rationale is that discovery of such policies, procedures and protocols does not threaten open discussion and debate within hospitals' review committees and, therefore, the privilege should not apply.

Aside from the quality assurance privilege, some courts also have found that such policies, procedures and protocols should be shielded from discovery under a rationale similar to that which prevents their introduction into evidence. "Virginia has long recognized that admitting internal standards of conduct into evidence allows prudent men to be deemed civilly liable if they violate the higher standards of caution they take upon themselves, independent of the law's requirements." *Mejia-Arevalo*, 77 Va. Cir. at 48 (citing *Va. Ry. & Power Co. v. Godsey*, 83 S.E. 1072 (Va. 1915)).

The parties do not dispute that the standard of care in a medical malpractice case, such as this one, is statutorily prescribed as follows:

> In any proceeding before a medical malpractice review panel or in any action against a physician, clinical psychologist, podiatrist, dentist, nurse, hospital or other health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by *a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth* and the testimony of an expert witness … as to such standard of care, shall be admitted ….

VA. CODE ANN. § 8.01-581.20 (2011Cum. Supp.) (emphasis added).

In *Va. Ry. & Power Co. v. Godsey*, 83 S.E. 1072 (Va. 1915), the Virginia Supreme Court held that the private rules of a defendant street car company were not admissible to establish the standard of care owed the plaintiff by the defendant. The rationale behind the *Godsey* court's holding was that to allow the admission into evidence of a party's private rules, which might require a much higher degree of care than mandated by the law, would discourage the adoption of such higher standard of care for fear that it would be used against the party. The *Godsey* court reasoned that if the adoption of such rules was treated as an admission against the party, then the party naturally would find it in its interest not to adopt any rules at all. *See* 83 S.E. at 1073. Several years later, the Virginia Supreme Court reaffirmed the holding in *Godsey* in *Pullen & McCoy v. Nickens*, 310 S.E.2d 452 (Va. 1983).

I am unpersuaded by the defendant's argument that its policies, procedures and protocols are not discoverable under the *Godsey* and *Pullen* cases because they

7

are irrelevant and inadmissible.  First, I find that the hospital's policies, procedures and protocols regarding fall prevention and the use of bed alarms is relevant to the plaintiff's case.  For instance, as plaintiff's counsel argued at the May 21, 2012, hearing, Mr. Fleming's medical record shows that he was assessed as a fall risk of "16" hours before he fell, and it further shows that subsequent to his fall, his treating physician ordered that "Fall Protocol I" be initiated.  (Plaintiff's Exhibit 1).  While the standard of care is statutorily prescribed, the hospital's policies, procedures and protocols regarding what measures should have been implemented for a patient with a fall risk of 16 and should be done when "Fall Protocol I" is initiated certainly is relevant to determining whether the defendant acted with the requisite "degree of skill and diligence practiced by a reasonably prudent practitioner. …"  These are only two examples of how such policies, procedures and protocols as sought by the plaintiff could be relevant to this case.

The court wishes to make clear that it is not making a determination as to the admissibility of these policies, procedures and protocols on the topics sought by the plaintiff.  That determination is one for the trial judge at a later date.  The court is finding only that these policies, procedures and protocols are discoverable.

Next, I find that the in-service training manuals given to Mr. Fleming's nurses prior to January 18, 2010, and the in-service training manuals regarding the use of bed alarms, are relevant to the instant case.  For example, while the defendant contends that the real issue, based on the plaintiff's own standard of care expert's opinion, is whether Mr. Fleming and his family members were educated on the use of a bed alarm, not the nursing staff, it is apparent that such education would be given to the patient and his or her family by the nursing staff.  That being the case, I find that the in-service training manuals are relevant to show what

8

education the patient and family members should have received. Of course, whether or not such education was provided is relevant to whether the defendant met the statutorily prescribed standard of care.

I note that the defendant also has argued that requests for production of the in-service training manuals are overly broad and unduly burdensome. The party resisting discovery has the burden of showing that the requested discovery is overly broad or unduly burdensome. Here, the defendant has not offered any explanation as to why such requests are overly broad or unduly burdensome. That being the case, I find that the defendant has failed to meet its burden, and I will overrule these objections. It is for all of the above-stated reasons that I find that the in-service training manuals sought by the plaintiff are relevant and discoverable.

Lastly, the plaintiff seeks the production of any incident reports of Mr. Fleming's January 17, 2010, fall. While the defendant contends that no such incident reports exist, it has disclosed the existence of two documents that are potentially responsive to this request. First, it has identified a "Variance Report" and second, an "Incident Report Followup." The defendant maintains that these documents contain identical factual information regarding Mr. Fleming's fall as that contained in his medical records, to which the plaintiff has access. However, in addition to the factual information, defense counsel represented to the court that these documents also contain "deliberative information."

Virginia Code § 8.01-581.17 states as follows: "Nothing in this section shall be construed as providing any privilege to any health care provider … with respect to any factual information regarding specific patient health care or treatment,

9

including patient care incidents ….."  Incident reports have been found discoverable in several circuits in the Commonwealth.  *See Hurdle v. Oceana Urgent Care,* 49 Va. Cir. 328 (City of Norfolk 1999); *Bradburn v. Rockingham Mem. Hosp*, 45 Va. Cir. 356 (Rockingham County 1998); *Huffman v. Beverly Cal. Corp.*, 42 Va. Cir. 205 (Rockingham County 1997); *Messerley v. Avante Group,* 42 Va. Cir. 26 (Rockingham County 1996); *Benedict v. Community Hosp. of Roanoke Valley*, 10 Va. Cir. 430 (Medical Malpractice Review Panel 1988); *Atkinson v. Thomas & Va. Beach Gen. Hosp.*, 9 Va. Cir. 21 (Va. Beach 1986).  Additionally, Virginia Code § 8.01-581.17(C) creates an exception to the privilege set forth in subsection (B), making patient records kept in the ordinary course of business discoverable.  In *Witzke v. Martha Jefferson Surgery Ctr., LLC et al.*, 70 Va. Cir. 217, 220 (Albemarle County 2006), the court held that under Virginia law, a factual incident report is not work product and is not protected from discovery by statute.  That court further held that because there was no evidence that the incident report at issue was a report specially prepared for quality assurance purposes, it was a medical record kept with respect to the patient in the ordinary course of business of operating a hospital and was, therefore, discoverable.  *See Witzke*, 70 Va. Cir. at 220.  In *Eppard v. Kelly*, 62 Va. Cir. 57, at *63 (Charlottesville 2003) (quoting *Bradburn*, 45 Va. Cir. at 360-61)), the court held that "peer review" should not be used to shield from disclosure medical records not generated initially for peer review objectives.  That court found it to be an "impermissible reading of the statute to extend the privilege to cover all factual reports or incident reports of accidents that happen at a hospital simply because they are sent to a quality assurance committee."

Despite defense counsel's representation that the Variance Report and the Incident Report Followup were created for its quality assurance process, used by

the hospital's quality assurance committee and submitted to the hospital's Patient Safety Organization, it has not offered any evidence to persuade the court that such is the case. In the same vein, although the defendant contends that these documents contain deliberative information, it has failed to meet its burden of persuasion. To the extent that the defendant contends that the Variance Report and the Incident Report Followup are privileged pursuant to the attorney-client privilege and the work-product doctrine, the defendant simply has offered no evidence to support such contentions. *See N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011) (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)) (a party asserting privilege has the burden of demonstrating its applicability). Specifically, the defendant does not allege that these documents contain any communication between counsel and the defendant regarding this case, nor does it allege that the documents contain counsel's mental impressions or were prepared by an attorney in anticipation of litigation.

It is for all of the reasons stated herein that I will grant the Motion and order the defendant to produce the requested documents.

An appropriate order will be entered.

ENTER:   May 25, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE